

*U.S. Department of Justice*

*United States Attorney*
*Eastern District of New York*

MEL:RAS
F. #2016R01224

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

December 14, 2021

By Email and ECF

The Honorable James R. Cho
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: United States v. Luz Elvira Cardona, et al.
      Criminal Docket No. 21-622 (LDH)

Dear Judge Cho:

   The defendants Luz Elvira Cardona, Roberto Cesar Cid Dominguez, Blanca Hernandez Morales, Jose Facundo Zarate Morales and Wayne Peiffer are scheduled to appear before the Court later today to be arraigned on the indictment. As set forth in the indictment, the defendants are charged in fourteen counts with violations of Title 18, United States Code, Sections 1591 (sex trafficking of minors and by force, fraud and coercion); 1951 (Hobbs Act extortion conspiracy), 1952 and 371 (conspiracy to use and the use of interstate facilities to promote prostitution and commit bribery), and 2423 (conspiracy to transport and the transportation of minors). For the reasons set forth below, the government respectfully submits that the Court should enter a permanent order of detention as to the defendants Luz Elvira Cardona, Roberto Cesar Cid Dominguez, Blanca Hernandez Morales, Jose Facundo Zarate Morales and, absent a substantial bail package, Wayne Peiffer.

I.  Procedural and Factual Background

   On December 10, 2021, a grand jury sitting in the Eastern District of New York returned a fourteen-count indictment against the defendants. As set forth in more detail below, the charges relate to the long-time operation of two separate but co-existing organizations—the Cid-Hernandez Sex Trafficking Organization and the Godinez Prostitution Business—and the years-long bribery of a law enforcement officer, Wayne Peiffer, who was provided free sexual services by the two organizations in exchange for

providing them protection from law enforcement detection and arrest. Each of the defendants is charged as follows:

- Luz Elvira Cardona is charged with conspiracy to transport minors (Count One), sex trafficking of minor Jane Doe #2 by force, fraud and coercion (Count Four), transportation of minor Jane Doe #2 (Count Five) and conspiracy to use an interstate facility to promote prostitution (Count Eight).

- Roberto Cesar Cid Dominguez is charged with conspiracy to transport minors (Count One), sex trafficking of minor Jane Doe #1 by force, fraud and coercion (Count Two), transportation of minor Jane Doe #1 (Count Three), Hobbs Act extortion conspiracy (Count Six), conspiracy to use an interstate facility to promote prostitution and commit bribery (Counts Eight and Nine), use of an interstate facility to promote prostitution (Count Eleven) and use of an interstate facility to commit bribery (Count Thirteen).

- Blanca Hernandez Morales is charged with conspiracy to transport minors (Count One), sex trafficking of minor Jane Doe #1 by force, fraud and coercion (Count Two), transportation of minor Jane Doe #1 (Count Three), sex trafficking of minor Jane Doe #2 by force, fraud and coercion (Count Four), transportation of minor Jane Doe #2 (Count Five) and conspiracy to use an interstate facility to promote prostitution (Count Eight).

- Jose Facundo Zarate Morales is charged with conspiracy to transport minors (Count One), sex trafficking of minor Jane Doe #2 by force, fraud and coercion (Count Four), transportation of minor Jane Doe #2 (Count Five) and conspiracy to use an interstate facility to promote prostitution (Count Eight).

- Wayne Peiffer is charged with Hobbs Act extortion conspiracy (Counts Six and Seven), conspiracy to use an interstate facility to promote prostitution and commit bribery (Counts Eight, Nine and Ten), use of an interstate facility to promote prostitution (Counts Eleven and Twelve) and use of an interstate facility to commit bribery (Counts Thirteen and Fourteen).

A. The Cid-Hernandez Sex Trafficking Organization

Since approximately May 2002, members of the Cid-Hernandez Sex Trafficking Organization engaged in the sex trafficking of women and minor girls and the promotion of prostitution. The defendants Luz Elvira Cardona, Roberto Cesar Cid Dominguez, Blanca Hernandez Morales and Jose Facundo Zarate Morales (the "Cid-Hernandez Defendants"), all of whom are related by blood or common-law marriage, used force, threats of force, fraud and coercion to cause young women and minor girls from Mexico to engage in prostitution in the United States. Members of the organization pressured the victims, including two minor victims, to travel to the United States with false

promises of employment and a better life. When the young girls arrived in New York, they were forced by the Cid-Hernandez Defendants to work in prostitution. The Cid-Hernandez Defendants threatened and verbally abused the minor victims in order to force them to engage in prostitution.

        The Cid-Hernandez Sex Trafficking Organization was based in Queens, New York but transported young women and minor girls to prostitution clients throughout the State of New York. The organization controlled "routes," which were comprised of contact lists of potential clients in specific areas, and employed individuals who served as drivers. The drivers were responsible for transporting women along preassigned routes to prostitution clients. The Cid-Hernandez Defendants acted as drivers for women and young girls and also directed other drivers working for the Cid-Hernandez Sex Trafficking Organization. As set forth below in greater detail, the defendant Roberto Cesar Cid Dominguez also bribed a law enforcement officer to ensure the organization's evasion of law enforcement.

      B.      The Godinez Prostitution Business

        The Godinez Prostitution Business also regularly caused women to be transported from a location in Queens, New York, to various locations, including Brewster, New York, for the purpose of engaging in prostitution and similarly used "routes" comprised of contact lists of potential clients in specific areas. The defendant Cristian Noe Godinez worked as a driver for the Godinez Prostitution Business and transported women along preassigned routes to prostitution clients.[1]

      C.      Police Officer Wayne Peiffer and the Bribery Schemes

        Both the Cid-Hernandez Sex Trafficking Organization and the Godinez Prostitution Business operated in Brewster, where they received protection from police officer and defendant Wayne Peiffer. Since at least 2006, Peiffer has been a police officer with the Village of Brewster Police Department ("BPD"). For more than eight years, Peiffer directed members of the Cid-Hernandez Sex Trafficking Organization and the Godinez Prostitution Business to deliver women to him, including at the BPD police station, so that he could engage in sexual activity with the women at no cost to Peiffer. In exchange, Peiffer provided the Cid-Hernandez Sex Trafficking Organization and the Godinez Prostitution Business protection from arrest, including by advanced warning of law enforcement operations and intervening to prevent arrest.

---

[1] The defendant Cristian Noe Godinez, who is also charged in the indictment, is currently a fugitive. Information related to Godinez is included herein to the extent that it relates to conduct by other defendants currently appearing before this Court.

II.  The Legal Standard

   A.  The Bail Reform Act

Under the Bail Reform Act, 18 U.S.C. § 3141 et seq., federal courts are empowered to order a defendant's detention pending trial upon a determination that the defendant is either a danger to the community or a risk of flight.  18 U.S.C. § 3142(e).  See 18 U.S.C. § 3142(e).  A finding of dangerousness must be supported by clear and convincing evidence.  See United States v. Ferranti, 66 F.3d 540, 542 (2d Cir. 1995); United States v. Chimurenga, 760 F.2d 400, 405 (2d Cir. 1985).  A finding of risk of flight must be supported by a preponderance of the evidence.  See United States v. Jackson, 823 F.2d 4, 5 (2d Cir. 1987); Chimurenga, 760 F.2d at 405.

The Bail Reform Act lists four factors to be considered in the detention analysis: (1) the nature and circumstances of the crimes charged, (2) the history and characteristics of the defendant, (3) the seriousness of the danger posed by the defendant's release, and (4) the evidence of the defendant's guilt.  18 U.S.C. § 3142(g).  Evidentiary rules do not apply at detention hearings and the government is entitled to present evidence by way of proffer, among other means.  See 18 U.S.C. § 3142(f)(2); see also United States v. LaFontaine, 210 F.3d 125, 130-31 (2d Cir. 2000) (government entitled to proceed by proffer in detention hearings); Ferranti, 66 F.3d at 542 (same); United States v. Martir, 782 F.2d 1141, 1145 (2d Cir. 1986) (same).  As the Second Circuit has explained:

> [I]n the pre-trial context, few detention hearings involve live testimony or cross examination.  Most proceed on proffers.  See United States v. LaFontaine, 210 F.3d 125, 131 (2d Cir. 2000).  This is because bail hearings are "typically informal affairs, not substitutes for trial or discovery." United States v. Acevedo-Ramos, 755 F.2d 203, 206 (1st Cir. 1985) (Breyer, J.) (quoted approvingly in LaFontaine, 210 F.3d at 131).  Indeed, § 3142(f)(2)(B) expressly states that the Federal Rules of Evidence do not apply at bail hearings; thus, courts often base detention decisions on hearsay evidence.  Id.

United States v. Abuhamra, 389 F.3d 309, 320 n.7 (2d Cir. 2004).

   B.  Presumption Cases

Under the Bail Reform Act, a rebuttable presumption of dangerousness and risk of flight arises when a defendant is charged with a violation of 18 U.S.C. § 1591.  See 18 U.S.C. § 3142(e)(3)(E).  The presumption means that the Court must initially assume there is "no condition or combination of conditions that will reasonably assure the appearance of the person as required and the safety of any other person and the community."  Id.  The defendant must come "forward with evidence that he does not pose a danger to the community or a risk of flight."  United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001). Even if the defendant were to meet his burden of production, "the presumption favoring

4

detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court." Id. If this limited burden of production is satisfied or absent the presumption, the government retains the burden of persuasion by clear and convincing evidence that the defendant presents a danger to the community and by a preponderance of evidence that the defendant presents a risk of flight. Id.

III. Discussion

    A. The Court Should Enter a Permanent Order of Detention as to the Cid-Hernandez Defendants

With respect to the Cid-Hernandez Defendants, each defendant is charged with sex trafficking, in violation of 18 U.S.C. § 1951, and are subject to a presumption of detention. Further, each of the factors referenced above weighs heavily against pre-trial release.

First, the nature and circumstances of the charges are serious. As set forth in detail above, each of the Cid-Hernandez Defendants is charged in connection with his or her membership in the Cid-Hernandez Sex Trafficking Organization, an organization that preyed on young women and minor girls for years. Moreover, each of the defendants is charged in connection with the sex trafficking of at least one minor victim by force, fraud and coercion, which carries a mandatory minimum sentence of 15 years in custody. Each of the Cid-Hernandez Defendants was a hands-on member of the organization directly involved in the exploitation of minor victims for the organization's financial gain. There can be no dispute of the severity of the charged offenses.

Second, the Cid-Hernandez Defendants' histories and characteristics demonstrate that they pose a danger to the community. Each of the defendants engaged in the charged conduct over the course of many years. They operated a decades-long business of exploiting and abusing women, and they recruited and coerced victims into prostitution. The Cid-Hernandez Defendants maintained control of the victims, including minor victims, through threats, lies and verbal abuse. The Cid-Hernandez Defendants not only threatened the victims that the organization trafficked from Mexico but also the drivers working for the organization. The defendants did not hesitate to use threats, manipulation and abuse in order to ensure that the Cid-Hernandez Sex Trafficking Organization would continue to operate. If released, the defendants would pose a danger to the victims as well as to the community as a whole.

Third, the weight of the evidence is strong. As set forth in the indictment, the Cid-Hernandez Defendants are charged with a variety of offenses relating to sex trafficking, promotion of prostitution and bribery. For almost two decades, the Cid-Hernandez Defendants have operated a sex trafficking business built on the exploitation of women. The government's evidence includes witness testimony, including the testimony of multiple

victims of the organization, phone evidence, police reports, wire transfer records, physical surveillance, among other documents and testimony.

Finally, the Cid-Hernandez Defendants pose a risk of flight. Each of the Cid-Hernandez Defendants faces a mandatory minimum sentence of 15 years and a possibility of life in prison and is thus highly motivated to flee the jurisdiction. The Second Circuit has held that the possibility of a severe sentence is an important factor in assessing flight risk. See United States v. Jackson, 823 F.2d 4, 7 (2d Cir. 1987); United States v. Cisneros, 328 F.3d 610, 618 (10th Cir. 2003) (defendant was a flight risk because her knowledge of the seriousness of the charges against her gave her a strong incentive to abscond); United States v. Townsend, 897 F.2d 989, 995 (9th Cir. 1990) ("Facing the much graver penalties possible under the present indictment, the defendants have an even greater incentive to consider flight."). When the incentive to flee is so strong, no combinations of sureties and other restrictions can assure his appearance. See, e.g., United States v. English, 629 F.3d 311, 321-22 (2d Cir. 2011) (affirming detention in part because the defendant was charged under § 924(c), faced a presumption against release, and a mandatory minimum sentence that incentivized fleeing); United States v. Henderson, 57 F. App'x 470, 471 (2d Cir. 2003) (summary order) ("[T]he presumption regarding flight risk has changed because Becton now faces a ten-year mandatory minimum sentence."). That remains true even if the defendant accepts electronic surveillance and home confinement. See United States v. Orena, 986 F.2d 628, 632 (2d Cir. 1993) ("electronic surveillance systems can be circumvented by the wonders of science and of sophisticated electronic technology") (internal quotation marks omitted). Moreover, the Cid-Hernandez Defendants have strong ties to Mexico, where the Cid-Hernandez Sex Trafficking Organization is based, in part, increasing the Cid-Hernandez Defendants' motivation and ability to flee.

B. The Court Should Enter a Permanent Order of Detention as to Wayne Peiffer Absent a Substantial Bail Package

Each of the § 3142(g) factors weighs heavily in favor of the detention of the defendant Wayne Peiffer. First, the nature and circumstances of the crimes charged clearly support detention. Peiffer is charged with acting as a corrupt police officer for years, accepting commercial sexual services worth thousands of dollars in exchange for official actions. As outlined in the indictment, Peiffer engaged in multiple criminal schemes both with the Cid-Hernandez Sex Trafficking Organization and the Godinez Prostitution Business, for which he is charged in nine separate counts. Rather than protect the women victimized by these organizations, as was his duty as an officer of the law, Peiffer protected the Cid-Hernandez Sex Trafficking Organization and the Godinez Prostitution Business. Given his position as a BPD officer, his actions constitute an especially jarring disregard for public safety, dereliction of his duty and affront to the rule of law. His extraordinary breach of trust and violation of his oath to protect the community weighs heavily in favor of detention.

6

Second, the history and characteristic of Peiffer weigh in favor of detention. Although Peiffer does not have a criminal history, for almost a decade, he abused his position as a police officer to exploit and take advantage of the people around him, including the women that he caused to engage in sexual activity with him. Moreover, the brazenness of Peiffer's conduct, which included repeatedly having women driven to the police station so that he could engage in sexual activity, demonstrates a complete disregard for the law and for the community. Peiffer has demonstrated through his actions and his willingness to abuse and exploit his position as a BPD officer that he should be detained.

Third, the weight of the evidence against Peiffer is overwhelming. As set forth in the indictment, Peiffer has directed at least three separate individuals to provide women to him for the purposes of engaging in sexual activity. The evidence against Peiffer includes not only witness testimony but also communications between Peiffer and members of the organizations arranging to bring women to Peiffer. For example, between April 23, 2017 and August 1, 2020, Peiffer and Godinez exchanged over 400 text messages. In those messages, Peiffer repeatedly directed Godinez to bring women to his "station," i.e. the BPD Police Station. Peiffer and Godinez also regularly discussed the appearances of the women Godinez had available to drive to Peiffer. For example, on or about December 15, 2017, Godinez wrote to Peiffer, "today I have a skinny one." [2] Peiffer responded, "no tits?", to which Godinez replied, "no tits no ass hahahahahahaha." Similarly, on or about April 21, 2018, Peiffer and Godinez engaged in the following exchange:

| | | |
|---|---|---|
| Peiffer: | | hello |
| Godinez: | | a fat one |
| Peiffer: | | big? |
| Godinez: | | big asssssss hahahahahaha |
| Peiffer: | | tits? |
| Godinez: | | small ones |

In these communications, Peiffer repeatedly requested that Godinez drive women to the police station where he was working. For example, on or about December 2, 2017, Peiffer wrote Godinez, "What time will you come to my station?" And Godinez

---

[2] The majority of the messages between Peiffer and Godinez are in the Spanish language; the draft translations contained herein are subject to revision.

7

responded, "1130." Similarly, on or about July 21, 2018, Peiffer and Godinez engaged in the following exchange:

| | | |
|---|---|---|
| Peiffer: | | hello |
| Godinez: | | a good one |
| Peiffer: | | big? |
| Godinez: | | yes |
| | \* \* \* | |
| Peiffer: | | good |
| Peiffer: | | are you stopping at the station? |

Peiffer's criminal conduct is clearly evidenced through his own words in hundreds of text messages. In addition to the text messages, the government's evidence includes witness testimony, additional phone evidence, physical surveillance, among other documents and testimony.

   Finally, in addition to the facts set forth above, Peiffer constitutes a flight risk due to the substantial prison term he faces. Peiffer is charged in nine counts, two of which carry a statutory maximum of 20 years. With regard to the U.S. Sentencing Guidelines (the "Guidelines"), Peiffer faces a Guidelines range of approximately 51 to 63 months. Peiffer thus faces a substantial term of imprisonment, which provides a powerful incentive to flee. For these reasons, the government respectfully submits that the Court should enter a permanent order of detention unless Peiffer presents a substantial bail package.

III. <u>Conclusion</u>

   For the foregoing reasons, the government respectfully requests that the Court enter a permanent order of detention as to the defendants Luz Elvira Cardona, Roberto Cesar

Cid Dominguez, Blanca Hernandez Morales, Jose Facundo Zarate Morales and, absent a substantial bail package, Wayne Peiffer.

                                        Respectfully submitted,

                                        BREON PEACE
                                        United States Attorney

By:    /s/
                                        Margaret Lee
                                        Rachel Shanies
                                        Assistant U.S. Attorneys
                                        (718) 254-6205/6140

cc:    Defense Counsel (by email)