

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

LHE:NJM/RAS
F. #2016R02114

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

April 12, 2023

<u>By ECF</u>

The Honorable LaShann DeArcy Hall
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Wayne Peiffer
                <u>Criminal Docket No. 21-622 (LDH)</u>

Dear Judge DeArcy Hall:

      The government respectfully submits this letter in advance of sentencing in the above-referenced case, scheduled for May 17, 2023. On April 8, 2022, the defendant Wayne Peiffer pled guilty before this Court to: (a) one count of conspiracy to commit extortion under color of official right, in violation of 18 U.S.C. § 1951(a), and (b) one count of conspiracy to use instrumentalities of interstate commerce to engage in Bribery in the Third Degree and Bribe Receiving in the Third Degree, contrary to New York Penal Laws §§ 200.00 and 200.10 and 18 U.S.C. § 1952(a)(3)(A), in violation of 18 U.S.C. § 371. For the reasons set forth below, a sentence at the high end of the United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines") range of 30 to 37 months' imprisonment is appropriate in this case.

      I.    <u>Background</u>

      The defendant was a part-time officer with the Brewster Police Department ("BPD") beginning in approximately 2006. See Presentence Investigation Report ("PSR") ¶ 66. As a part-time officer, he worked 16-24 hours per week, typically on Friday and/or Saturday night. <u>Id.</u>

      Beginning at least in 2010, the defendant used his law enforcement position to cause two separate prostitution organizations (the "Cid-Hernandez Sex Trafficking Organization and the Godinez Prostitution Business") to provide him with free services because of his position as a police officer. The defendant regularly and frequently engaged in sexual conduct with sex

workers without paying.  In exchange for the free prostitution services, the defendant would provide occasional information relating to police enforcement actions to representatives of the two criminal organizations he protected.  He also allowed both the Cid-Hernandez Sex Trafficking Organization and the Godinez Prostitution Business to operate with impunity during his shifts, which frequently included weekend nights.

According to drivers who worked for the Cid-Hernandez Sex Trafficking Organization, the defendant would inspect the women working as prostitutes.  He sometimes decided that they did not look desirable to him, but when he decided they did, he would make arrangements for the driver to bring the woman to the police station.  At the police station, the defendant would engage in sexual conduct with the women, sometimes including oral sex or vaginal penetration.  The defendant did not pay for the services of the women.

Evidence obtained from a search warrant executed on co-defendant Cristian Godinez's cellular phone demonstrated the frequency with which the defendant used his position to satisfy his sexual urges.  From April 2017 through at least January 2020, Godinez exchanged at least 463 text messages with the defendant.

On April 23, 2017, at approximately 12:45 a.m., Godinez and the defendant had the following exchange of messages:

> GODINEZ: 121 marvin en 5 minutos
>
> PEIFFER: K
>
> PEIFFER: Ve a mi estación ["Go to my station"]
>
> GODINEZ: Ok 5 minutos llego ["Ok 5 minutes, I arrive"]

At approximately 1:30 a.m., the defendant messaged Godinez, "Por favor dile muchas gracias" ("Please tell them thank you").

The defendant messaged Godinez regularly to inquire about the woman Godinez was driving—asking "Bueno o nada Bueno?" ("Good or no good?").  Godinez would respond differently on different days—on April 29, 2017, he responded, "No tam [sic] Bueno" ("Not so good"), but on May 5, 2017, he responded, "Una más umenos," "Esta joven" ("More or less," "She's young").  The defendant responded, "Boobs?," and Godinez replied, "No mucho esta flaquita hoy pero bonita" ("Not much she's skinny but pretty").  The defendant followed up, asking, "Donde? [Where?]," and Godinez responded, "Carmel," another small town in Putnam County.

On some occasions, when one driver had a woman he apparently did not think the defendant would enjoy, he would recommend "the other one," a reference to the competition's driver who was also bringing women to work as prostitutes in Brewster.  For example, on June 23,

2017, Godinez messaged the defendant, "Hola hoy tengo una flaquita," "El otro tiene una domicana grande" ("Hello today I have a skinny one," "The other has a big Dominican").

The messages from Godinez's telephone confirm that Godinez brought women to the defendant repeatedly, including frequently at the BPD station. When a driver for the Cid-Hernandez Sex Trafficking Organization was arrested in October 2018, Godinez reached out to the defendant for information relating to the arrest.

On at least two occasions, the defendant warned employees of the Cid-Hernandez Sex Trafficking Organization not to drive to Brewster. On one occasion, law enforcement officers in a narcotics investigation were conducting car stops; the defendant met one of the criminal organization's employees in a gas station and told him, in sum and substance and in part, to get away from Brewster so that he was not caught. On another occasion, the defendant called one of the drivers and advised that he not come to Brewster because of unspecified law enforcement activities. See generally PSR ¶ 16.

When a driver for the organizations was pulled over by another BPD officer, the defendant would vouch for the driver as his "friend," and would ensure that the driver was not arrested or charged.

II.     Sentencing Guidelines Calculation

The government agrees with the Guidelines calculation of the total offense level as calculated in the PSR. See PSR ¶¶ 30-42.[1] This calculation is set forth below:

Counts Six & Ten: Extortion Under Color of Official Right & Conspiracy to Violate the Travel Act

| | |
|---|---|
| Base Offense Level<br>(U.S.S.G. §§ 2E1.2(a)(2) [Count Ten Only], 2C1.1(a)(1)) | 14 |
| Offense Involved More Than One Extortion or Bribe<br>(U.S.S.G. § 2C1.1(b)(1)) | +2 |

---

[1] In their plea agreement, the parties accounted for the defendant's two crimes of conviction—conspiracy to commit different crimes, on behalf of two distinct criminal organizations—distinctly. Moreover, the defendant's extortion of the Cid-Hernandez Trafficking Organization included a different victim from the defendant's bribery by the Godinez Prostitution Business. Cf. U.S.S.G. § 3D1.2(b). But the measure for the harm of bribery under Guidelines Section 2C1.1(b) is the value of the payment, and the Guideline explicitly contemplates "more than one bribe or extortion." U.S.S.G. § 2C1.1(b)(1)-(2). Accordingly, pursuant to Section 3D1.2(d), the counts are appropriately grouped. See U.S.S.G. § 3D1.2(d) & app. n. 6.

| | |
|---|---:|
| Defendant Was a Public Official in a Sensitive Position (U.S.S.G. § 2C1.1(b)(3)) | +4 |
| Obstruction of Justice (U.S.S.G. § 3C1.1) | +2 |
| Adjusted Offense Level (Subtotal): | <u>22</u> |
| Less: Acceptance of Responsibility (U.S.S.G. § 3E1.1(a), (b)) | <u>-3</u> |
| Total: | <u>19</u> |

Based on a Criminal History Category of I, a total adjusted offense level of 19 results in an advisory Guidelines range of 30 to 37 months of imprisonment. PSR ¶ 74.

   III.   Analysis

"[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." Gall v. United States, 552 U.S. 38, 49 (2007) (citation omitted). Next, a sentencing court should "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, [it] may not presume that the Guidelines range is reasonable. [It] must make an individualized assessment based on the facts presented." Id. at 50 (citation and footnote omitted).

Title 18, United States Code, Section 3553(a) provides that, in imposing sentence, the Court shall consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A)   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B)   to afford adequate deterrence to criminal conduct; [and]
>>
>> (C)   to protect the public from further crimes of the defendant.

"[I]n determining whether to impose a term of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, [the Court] shall consider

the factors set forth in section 3553(a) to the extent that they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation." 18 U.S.C. § 3582(a).

It is well-settled that, at sentencing, "the court is virtually unfettered with respect to the information it may consider." United States v. Alexander, 860 F.2d 508, 513 (2d Cir. 1988). Indeed, Title 18, United States Code, Section 3661 expressly provides that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." Thus, the Court must first calculate the correct Guidelines range, and then apply the 3553(a) factors to arrive at an appropriate sentence, considering all relevant facts.

IV. Discussion

The government respectfully submits that the Court should impose a sentence at the top of the applicable advisory Guidelines range. Such a sentence is appropriate to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A). Such a sentence will both provide appropriate punishment for the "nature and circumstances of the offense" as well as further the aims of specific and general deterrence. See id. §§ 3553(a)(1), (a)(2)(B) & (a)(2)(C).

A. Nature and Circumstances of the Offense, Respect for the Law and Just Punishment

The nature and circumstances of the defendant's offenses are extremely serious. Over the course of years, the defendant used his position as a law enforcement officer to protect criminal organizations responsible for sex trafficking and subjugation of immigrant women and girls. If the defendant had fulfilled his sworn duty as a law enforcement officer, his co-defendants could have been arrested and prosecuted nearly a decade earlier—and they could have stopped trafficking in women that much earlier. But the defendant did not. Instead, he coerced the criminals into making women service him for free. In exchange, the defendant undermined the efforts of law enforcement to stop the criminal organizations, which were able to operate with impunity.

The defendant's crimes thoroughly undermined the rule of law. Instead of protecting the public, the defendant deliberately chose his own short-term satisfaction over the welfare of the public. He did not appear to know or care about the fates of the women whose sexual services he required for free, and did not investigate the organizations profiting from their labors. Instead, he protected those organizations, ensuring that they were able to evade detection and capture.

This conduct deeply undermined the public's trust in the integrity of its law enforcement officers at a time in which the public's confidence in the police is particularly vulnerable. See Aimee Ortiz, "Confidence in Police Is at Record Low, Gallup Survey Finds," Aug. 12, 2020, N.Y. Times, available at https://www.nytimes.com/2020/08/12/us/gallup-poll-police.html. Without trust in the fair, evenhanded and uncorruptible pursuit of justice, the rule of law disintegrates. "The democratic acceptance of . . . effective but proportionate law enforcement [is among] the building blocks of trust and the single most important antidote against the violent expression of dissatisfaction, greed, and lust for power at the expense of other human beings." Ernst M.H. Hirsch Ballin, "Keynote Address," 110 Am. Soc'y Int'l L. Proc. 347, 349 (2016). When law enforcement authorities trusted with enforcing the rules pursue their own selfish, corrupt ends, the community they rule has no basis to accept the law's fair application, and the institutions on which we rely perish.

Because this crime was serious and undermines the public's trust in the integrity of the law enforcement community of which the defendant was ostensibly a proud member, the just punishment for the offense must restore the public's faith in the evenhanded administration of justice, and must demonstrate that nobody is above the law.

### B.   History and Characteristics of the Defendant

The history and characteristics of the defendant also justify a significant incarceratory sentence. See 18 U.S.C. § 3553(a)(1). He was raised in a middle-class family, attended college, and had every opportunity to succeed. PSR ¶¶ 50-57. Moreover, the defendant was well-off (earning a salary of $145,000 per year at a Heating, Ventilation, and Air Conditioning ("HVAC") company in addition to his pay from the BPD. PSR ¶ 65. He also was dating a woman younger than half his age. PSR ¶ 56. Despite having every advantage in life, the defendant chose to coerce young women into providing him with free sexual services because of his position as a police officer.

### C.   The Need to Avoid Unwarranted Disparities

The Court, in fashioning a sentence, should also consider sentences that other similarly situated defendants receive. See 18 U.S.C. § 3553(a)(6). The defendant's Guidelines range does not ascribe a dollar value to the defendant's corrupt extortion, because the market value of the sexual services he received was likely less than the relevant threshold. But the defendant's decision to be paid in free sexual services provided by women working in prostitution for the criminal organizations the defendant protected does not make his corruption less of a problem than is corruption of officers who are paid in cash. The defendant, who protected two separate criminal commercial sex organizations from law enforcement while ostensibly a sworn officer himself, received payments in a form that makes him more culpable than defendants who are corrupted simply by cash. Accordingly, the defendant's Guidelines range may understate his criminality.

V.	Conclusion

For the foregoing reasons, the government respectfully requests that the Court impose a sentence of 37 months' imprisonment, which would be sufficient, but not greater than necessary, to achieve the goals of sentencing.

Respectfully submitted,

BREON PEACE
United States Attorney

By:	/s/
	Lauren H. Elbert
	Nicholas J. Moscow
	Gillian Kassner
	Rachel A. Shanies
	Assistant U.S. Attorneys
	718-254-7000

cc:	Clerk of the Court (LDH) (by ECF)
	Susan G. Kellman, Esq. (Counsel to the defendant) (by ECF and e-mail)
	Roberta Holton, Senior United States Probation Officer (by e-mail)